**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LAKESHIA TAYLOR, ET AL.,**<br>     **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  26-368** |
| **SOUTHERN UNIVERSITY**<br>**AND AGRICULTURAL AND**<br>**MECHANICAL COLLEGE**<br>**BOARD OF SUPERVISORS, ET AL.,**<br>     **Defendants** | **SECTION: "E" (4)** |

## <u>ORDER AND REASONS</u>

Before the Court is Plaintiffs Lakeisha Taylor, Rhasean Taylor, Sr., and Zoey Taylor's Motion to Remand.[1] Defendant Amentum Technology, Inc. f/k/a Jacobs Technology, Inc. ("Amentum") opposes the motion.[2] Plaintiffs filed a Reply.[3] The Court subsequently gave leave for supplemental briefing from both parties.[4]

## <u>BACKGROUND</u>

The following factual allegations are taken from the Plaintiffs' Second Amended and Restated Petition for Damages.[5] This case arises out of alleged exposure to toxic chemicals at the National Aeronautics and Space Administration Michoud Assembly Facility ("MAF") in New Orleans, Louisiana. In May of 2009, Defendant Amentum entered into a contract with NASA to provide "remediation and deconstruction services" at the MAF.[6] In November of 2009 and February of 2010, respectively, Rhasean and

---

[1] R. Doc. 12.
[2] R. Doc. 20.
[3] R. Doc. 24.
[4] R. Docs. 27, 30.
[5] R. Doc. 4-3.
[6] *Id.* at p. 5 ¶ 5; *see* . R. Doc. 4 at p. 2 ¶ 5. In its Notice of Removal, Amentum says its contract with NASA was "to provide manufacturing support and facilities management" at the Michoud Assembly Facility. R. Doc. 4 at p. 2 ¶ 5. The Performance Work Statement—relevant to the base contract—describes the contract as a "Manufacturing Support and Facilities Operations Contract[.]" R. Doc. 20-1 at p. 7.

Lakeisha Taylor began to work at the MAF as chemical engineers.[7] In October of 2010, their child, Zoey Taylor, was born with Down Syndrome.[8] Plaintiffs allege their daughter's Down Syndrome is a consequence of their continuous exposure at the MAF to toxins that may have an adverse effect on reproduction.[9] Plaintiffs filed a Petition for Damages in March of 2023 and a Second Amended and Restated Petition in December of 2025 in the Civil District Court for the Parish of Orleans.[10] The Second Amended and Restated Petition added Amentum as a defendant.[11] Plaintiffs makes several claims against Amentum grounded in Louisiana tort law, including negligence and strict liability for (1) failing to provide proper personal protective equipment; (2) failing to warn workers of the reproductive health hazards of chemical exposure; (3) failing to implement adequate industrial hygiene policies, monitoring, and controls; (4) failing to maintain adequate ventilation and vapor recovery systems; and (5) failing to properly investigate the health hazards to which Plaintiffs were exposed.[12]

Amentum was served on January 20, 2026.[13] On February 20, 2026, Amentum timely filed its notice of removal.[14] In its notice of removal, Amentum asserts removal is proper under the federal officer removal statute[15] because (1) it is a "person" within the meaning of the statute, (2) it acted pursuant to a federal officer's directions, (3) its conduct is related to an act pursuant to the federal officer's directions, and (4) it can assert a

---

[7] R. Doc. 4-3 at pp. 7-8 ¶¶ 16-17.
[8] *Id.* at p. 6 ¶ 9 and 9 ¶ 25.
[9] *Id.* at p. 7 ¶ 15 and p. 9 ¶ 25.
[10] R. Docs. 4-1 and 4-3.
[11] *Id.*
[12] *See* R. Doc. 4-3 at pp. 9-12; R. Doc. 12-1 at p. 4.
[13] R. Doc. 4-3 at p. 1.
[14] R. Doc. 4. *See* 28 U.S.C. § 1446(b)(3).
[15] 28 U.S.C. § 1442(a)(1).

"colorable federal defense" to at least one of Plaintiffs' claims.[16] As regards the final prong of the test, Amentum asserted two federal defenses: (1) derivative sovereign immunity under *Yearsley v. W.A. Ross Constr. Co.*[17] and (2) the government contractor defense under *Boyle v. United Technologies Corp.*[18]

On March 19, 2026, Plaintiffs filed their Motion for Remand, which Defendant opposes.[19]

### **LAW AND ANALYSIS**

In their Motion for Remand, Plaintiffs argue that Amentum has not met its burden for removal under the federal officer removal statute.[20] The federal officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes removal of a suit by the "United States or any agency thereof (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any color of such office[.]" To remove an action under Section 1442(a), a defendant must show: (1) it has asserted a colorable defense, (2) it is a "person" within the meaning of the statute, (3) it has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions.[21]

As the Supreme Court has explained, "[o]ne of the primary purposes" of the federal officer removal statute is "to have [colorable federal] defenses litigated in federal courts."[22] In part due to this unique purpose, courts interpret the federal officer removal

---

[16] R. Doc. 4 at p. 5 ¶ 16. *See* Latiolais v. Huntington Ingalls, Inc., 951 F.3d 286, 296 (5th Cir. 2020); Mesa v. California, 489 U.S. 121 (1989).
[17] 309 U.S. 18 (1940).
[18] 487 U.S. 500 (1988). See R. Doc. 4 at pp. 6-7.
[19] R. Doc. 12, 24.
[20] R. Doc. 12.
[21] Latiolais v. Huntington Ingalls, Inc., 951 F.3d 286, 296 (5th Cir. 2020).
[22] Willingham v. Morgan, 395 U.S. 402, 407 (1969).

statute differently from the general removal provision. Unlike the general removal statute, which must be "strictly construed in favor of remand,"[23] the federal removal statute "is to be broadly construed in favor of a federal forum."[24]

In order to remove under the statute, the defendant is not required to show a "causal nexus" between defendant's acts under color of federal office and the plaintiff's claims.[25] In *Latiolais v. Huntington Ingalls, Inc.*, the Fifth Circuit held *en banc* that the phrase "relating to" in Section 1442(a) requires only that the defendant show "the charged conduct is connected or associated with an act pursuant to a federal officer's directions."[26] While this interpretation was for some years the subject of a circuit split, the Supreme Court in its recent decision in *Chevron v. Plaquemines Parish, LA* agreed with the Fifth Circuit and held the phrase "relating to" within the federal removal statute "sweeps broadly" and "[a]ccordingly, a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct."[27] Instead the removing defendant must show its conduct related to its federal duties and the connection "is not 'tenuous, remote, or peripheral.'"[28] In light of *Chevron*, Plaintiffs on reply concede the challenged conduct of Amentum relates to Amentum's federal contractual duties at the MAF.[29] The parties agree their dispute is limited to whether Amentum has asserted a "colorable federal defense."[30]

---

[23] Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).
[24] Williams v. Lockheed Martin Corp., 990 F.3d 852, 859 (5th Cir. 2021) (quoting Papp v. Fore-Kast Sales Co., 842 F.3d 805, 811-12 (3d Cir. 2016)).
[25] *See Latiolais*, 951 F.3d at  296.
[26] *Id.*
[27] 146 S.Ct. 1052, 1060 (2026).
[28] *Id.* at 161 (quoting Rutledge v. Pharmaceutical Care Management Assn., 592 U.S. 80, 94 (2020) (Thomas, J., concurring)).
[29] R. Doc. 24 at p. 2.
[30] *See id.*

A federal defense is colorable unless it is either "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous."[31] Accordingly, to be "colorable" the asserted federal defense need not be "clearly sustainable" as the statute does not require the removing party to "win his case before he can have it removed."[32] This standard corresponds to the purpose underlying the removal statute: "to have the validity of the [federal] defense . . . tried in a federal court."[33] Amentum asserts two federal defenses: "derivative sovereign immunity" under *Yearsley* and government contractor immunity under *Boyle*.[34] To remove under the statute, a defendant need assert only a "colorable federal defense" to at least one of the plaintiff's claims. The Court will determine whether Amentum has asserted a colorable federal defense under *Boyle*.

The Plaintiffs highlight that Amentum has not in fact produced its contract with NASA, rendering its assertions of a *Boyle* defense nothing more than conclusory statements,[35] but Plaintiffs allege there was such a contract in their Second Amended and Restated Petition for Damages.[36] Amentum represents that, due to its record retention policy, it has thus far been unable to locate the government contract.[37] Plaintiffs assert Amentum can establish, at best, that it was governed by federal regulations, which would be a legally insufficient showing for the federal *Boyle* defense Amentum has asserted.[38]

---

[31] *Latiolais*, 951 F.3d at 297 (5th Cir. 2020) (citing *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017).
[32] *Id.* at 296 (quoting Jefferson County v. Acker, 527 U.S. 423, 431 (1999)).
[33] *Willingham*, 395 U.S. at 407.
[34] *See* R. Doc. 4 at pp. 6-7; Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940); Boyle v. United Technologies Corp., 487 U.S. 500 (1988).
[35] R. Doc. 12 at p. 2.
[36] *See* R. Doc. 4-3 at p. 5 ¶ 5.
[37] R. Doc. 20 at p. 2 n.8. Amentum has submitted a Freedom of Information Act request to NASA to produce the contract. R. Doc. 20-2.
[38] R. Doc. 24 at p. 4 and R. Doc. 30 at pp. 6-7. *See* Glenn v. Tyson Foods, Inc. 40 F.4th 230, 235 (5th Cir. 2022) (holding that being subject to heavy federal regulation is, on its own, insufficient to confer federal jurisdiction).

Plaintiffs contend further that they seek recovery not for Amentum's compliance or noncompliance with contractual provisions or federal regulations, but rather for Amentum's separate acts of negligence—failure to warn, failure to investigate, etc.—which fall outside the scope of immunity under *Boyle*.[39]

It is the defendant's burden to establish the existence of federal jurisdiction over a controversy.[40] Amentum's support for its colorable federal defense relies largely on documentation appended to its opposition to Plaintiffs' Motion to Remand.[41] Courts may construe documents offered in opposition to a motion to remand as an amendment to a notice of removal so long as the documents do not "assert an entirely new basis for federal jurisdiction."[42] The documents Amentum attached to its opposition to the motion to remand do not assert new bases for jurisdiction; rather, they provide detail on the specific aspects of its base contract with NASA relevant to the *Boyle* defense asserted in its original notice of removal.[43]

Specifically, Amentum attached an affidavit of Joseph Costa to its opposition to the motion to remand.[44] In the affidavit, Costa states he was an employee of Amentum at the

---

[39] R. Doc. 30 at 7. *See* Adams v. Eagle, Inc., 2022 WL 4016749 at *9-12 (granting plaintiff's motion for summary judgment on defendant's *Yearsley* and *Boyle* defenses).

[40] Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998).

[41] *See* R. Docs. 20, 20-1, and 20-2.

[42] Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., LLC, 29 F. Supp. 3d 808, 848-49 (E.D. La. 2014); *see Willingham*, 395 U.S. at 407 n.3 ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits."); USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 205 n.12 (3d Cir. 2003) (explaining a court may "consider jurisdictional facts contained in later-filed affidavits as amendments to the removal petition where . . . those facts merely clarify (or correct technical deficiencies in) the allegations already contained in the original notice.").

[43] *See* R. Doc. 4 at pp. 4-7 and R. Doc. 20-1. *See Se. Louisiana Flood Prot. Auth.-E.*, 29 F. Supp. 3d at 848-49 (finding evidence presented in a defendant's opposition to a motion to remand to be timely where the evidence "provide[d] additional levels of detail on the specific aspects of the [applicable] federal regulatory framework[.]").

[44] R. Doc. 20-1.

MAF from 2009 to 2016.[45] Costa identifies the base contract between NASA and Amentum as number NNMO838773C.[46] Plaintiffs argue this is a distinct contract from the contract named in Amentum's FOIA request: number MSFOC NNMO9AA20C.[47] Amentum explains that, while it made a FOIA request under the identification number MSFOC NNMO9AA20C, the number referenced in the FOIA request is the identification number of the request for proposal pursuant to which the government contract was entered.[48] NNMO838773C refers to the government contract itself.[49]

Further, Costa asserts that "NASA had on site safety lead, environmental lead, and projects lead personnel . . . employed by the government who were in part responsible for ensuring that [Amentum] complied with all government[-]mandated and detailed health, safety and emergency requirements, which [Amentum] could not deviate from without government approval[.]"[50] In addition, Costa attaches to his affidavit a copy of a Performance Work Statement ("PWS")—a voluminous document listing requirements for, among other things, safety, health, and emergency management—that he attests was attached to the base contract.[51] The requirements in the PWS largely refer to federal regulations and documents outside the PWS, for instance: "The Contractor shall: 1. Identify and control health hazards in the work environment and ensure compliance with the environmental health provisions of OSHA and Executive Order 12196, *Occupational*

---

[45] *Id.* at p. 1 ¶ 1.
[46] *Id.* at p. 1 ¶ 2.
[47] R. Doc. 20-2; R. Doc. 24 pp. 3-4.
[48] R. Doc. 27 at p. 4, n. 23.
[49] *Id.*
[50] R.. Doc. 20-1 at p. 2 ¶ 5.
[51] *Id.* pp. 4-94.

*Safety and Health Programs for Federal Employees.*"[52] Costa attests that the base contract between NASA and Amentum required Amentum to comply with the PWS.[53]

Amentum argues that the terms of the base contract—coupled with the PWS—are sufficient to show the claims against Amentum are related to its asserted federal defense under *Boyle*.[54] In Amentum's view, its contract with NASA required it to conform its health and safety practices to precise federal specifications. Amentum argues that under the contract and the PWS it could not deviate from these specifications. Therefore, according to Amentum, Plaintiffs' claims concerning health and safety practices (the charged conduct) are connected to or associated with an act pursuant to a federal officer's directions under provisions of Amentum's contract with the federal government. Amentum argues this is sufficient for its asserted *Boyle* defense to be colorable for purposes of the federal removal statute.[55]

A *Boyle* defense "extends to federal contractors an immunity enjoyed by the federal government in the performance of discretionary actions."[56] Though *Boyle* is frequently litigated as a defense to design defect torts, immunity under *Boyle* does not necessarily apply "only to claims labeled 'design defect.'"[57] Rather, it protects a contractor "when the Government directed the contractor to do the very thing challenged in the suit."[58]

Under Plaintiffs' theory, Amentum's showing in its Notice of Removal does not suffice to make a colorable federal defense under *Boyle* because Amentum has not produced any contractual provision in which NASA required Amentum to use any of the

---

[52] *Id.* at p. 29 (emphasis in original).
[53] R. Doc. 20-1 at p. 2 ¶ 3-4.
[54] R. Doc. 20 at pp. 5-11.
[55] *Id.*
[56] *Latiolais,* 951 F.3d at 297.
[57] *Id.* (quoting Bailey v. McDonnell Douglas Corp., 989 F.2d 794, 801)).
[58] Hencely v. Fluor Corp., 146 S. Ct. 1086, 1095 (2026).

toxins to which Plaintiffs claim exposure.[59] Plaintiffs contend the only evidence Amentum has been able to produce amount to a requirement that it comply with "garden-variety OSHA rules and other federal regulations."[60]

Plaintiffs' argument fails because it mistakes a colorability analysis for a merits analysis. At this early stage of litigation, Amentum does not need to prove each element of its *Boyle* defense to be entitled to a federal forum. Such a requirement would force Amentum to "win [its] case before [it] can have it removed."[61] Amentum has made a showing that its *Boyle* defense is neither "immaterial and made solely for the purpose of obtaining jurisdiction" nor "wholly insubstantial and frivolous"; this suffices for a colorable federal defense.[62]

Plaintiffs do not dispute the existence of a base contract between NASA and Amentum.[63] Nor do Plaintiffs dispute that the PWS was related to the base contract.[64] Further, Costa has provided an affidavit based on his personal knowledge stating that NASA personnel were "on site" at the MAF ensuring that Amentum "complied with all government mandated and detailed health, safety, and emergency requirements, which [Amentum] could not deviate from without government approval[.]"[65] This allegation of close and continuous supervision—coupled with the existence of the base contract and the PWS—renders Amentum's *Boyle* defense viable for merits determination at a subsequent stage of litigation. The purpose of the federal removal statute is "to have the validity of the

---

[59] R. Doc. 24 p. 3.
[60] *Id.* at p. 6.
[61] *Latiolais*, 951 F.3d at 296 (quoting Jefferson County v. Acker, 527 U.S. 423, 431 (1999)).
[62] *Id.* at 297 (citing Zeringue v. Crane Co., 846 F.3d 785, 790 (5th Cir. 2017).
[63] *See* R. Doc. 4-3 at p. 5 ¶ 5.
[64] *See* R. Doc. 24 at pp. 4-5.
[65] R. Doc. 20-1 at p. 2 ¶ 5.

[federal] defense . . . tried in a federal court."[66] So long as the validity of Amentum's defense is not foreclosed, Amentum is entitled to remove under Section 1442(a)(1).[67]

In *Latiolais*, the Fifth Circuit found a colorable federal defense based on a combination of contractor evidence and possible inferences from that evidence, which, taken together, made it possible the contractor might eventually prevail under *Boyle*.[68] The showing here is analogous. Amentum has presented evidence it had a contract with NASA, that the contract required compliance with specific federal regulations and guidance, and that Amentum was subject to NASA's supervision and control.[69] This evidence is sufficient to establish that Amentum's *Boyle* defense is neither immaterial and made solely for the purpose of obtaining jurisdiction, nor wholly insubstantial and frivolous.[70]

To be sure, if Amentum had simply argued it was *subject* to heavy federal regulations, without a contractual relationship with the federal government, that would not suffice for federal jurisdiction.[71] In *Glenn v. Tyson Foods, Inc.*, the Fifth Circuit found a poultry-processing facility did not meet the requirements of Section 1442(a)(1) because it lacked any contract with the government.[72] In that case, the defendant sought removal on the basis it had a "special" relationship with the government, owing to its high degree of cooperation with and supervision by the USDA.[73] For the Fifth Circuit, the problem

---

[66] *Willingham*, 395 U.S. at 407.
[67] *See* Bell v. Thornbug 743 F.3d84, 90 (5th Cir. 2014) (finding the defendant had asserted a colorable federal defense in showing his disputed conduct was "performed under the color of his office, in the performance of his duties thereunder, after input from the peer review process, and involving communication with and involvement of the [federal officials]").
[68] *See Latiolais*, 951 F.3d at 297-98.
[69] *See* R. Doc. 20-1.
[70] *See Latiolais*, 951 F.3d at 297.
[71] *See* Glenn v. Tyson Foods, Inc., 40 F.4th 230, 235-36 (5th Cir. 2023).
[72] *Id.*
[73] *Id.* at 235.

with this argument was "the absence of any evidence of delegated authority or a principal/agent relationship at all."[74] With no contract between the poultry-processing facility and the government to point toward, the defendant could not claim federal jurisdiction.[75] Amentum's case is distinguishable for the simple fact that it asserts it had a base contract with NASA to provide manufacturing support and facilities management at the MAF.[76] Absent a showing more akin to *Glenn*, it is difficult to see how Amentum's federal defenses would be foreclosed.

Because Amentum has asserted at least one federal defense that is neither immaterial nor made solely for the purpose of obtaining jurisdiction, nor wholly insubstantial and frivolous, its federal defense under *Boyle* is colorable for the purposes of Section 1442(a)(1).[77]

**CONCLUSION**

**IT IS ORDERED** that Plaintiffs' Motion to Remand is **DENIED**.

**New Orleans, Louisiana, this 25th day of June, 2026.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[74] *Id.* at 236.

[75] *Id.* at 235-36.

[76] R. Doc. 4 at p. 2 ¶ 5; R. Doc. 20-1 p. 1 ¶ 2.

[77] Because one federal defense is sufficient under § 1442(a)(1), it is unnecessary to analyze Amentum's potential *Yearsley* defense for purposes of federal officer removal.